## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## JASPER DIVISION

VICKIE DARLENE ALSTON,     )
            )
    Plaintiff,         )
            )
v.                )    Case No. 6:25-cv-00032-SGC
            )
COMMISSIONER, SOCIAL     )
SECURITY ADMINISTRATION,   )
            )
    Defendant.     )

## MEMORANDUM OPINION[1]

Vickie Darlene Alston appeals from the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying her application for Disability Insurance Benefits ("DIB"). (Doc. 1).[2] Alston exhausted her administrative remedies, and the Commissioner's decision is ripe for review. For the reasons discussed below, the Commissioner's decision will be affirmed.

## I. STATUTORY AND REGULATORY FRAMEWORK

To establish eligibility for disability benefits, a claimant must show "the inability to engage in any substantial gainful activity by reason of any medically

---

[1] The parties have consented to the exercise of dispositive jurisdiction by a magistrate judge pursuant to 28 U.S.C. § 636(c). (Doc. 9).

[2] Citations to the record in this case refer to the document and page numbers assigned by the court's CM/ECF document management system and appear in the following format: (Doc. __ at __). Citations to the administrative record (Doc. 7) refer to the page numbers assigned by the Commissioner and appear in the following format: (R. __).

determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 416(i)(1)(A), 423(d)(1)(A); *see also* 20 C.F.R. § 404.1505(a). A claimant must also show she was disabled between her alleged onset disability date and her date last insured. *Mason v. Comm'r of Soc. Sec.*, 430 F. App'x 830, 831 (11th Cir. 2011) (citing *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005); *Demandre v. Califano*, 591 F.2d 1088, 1090 (5th Cir. 1979)). The Social Security Administration ("SSA") follows a five-step analysis to determine whether an individual is eligible for disability benefits:

1. The Commissioner determines whether the claimant is engaged in "substantial gainful activity." If so, the claimant is not disabled; otherwise, the Commissioner proceeds to the second step.

2. The Commissioner then determines whether the claimant suffers from a severe physical or mental impairment or combination of impairments that has lasted or is expected to last for a continuous period of at least twelve months. If there is no severe impairment, the claimant is not disabled; otherwise, the Commissioner proceeds to the third step.

3. Next, the Commissioner determines whether the claimant's impairment meets or equals one of the "Listings" found in 20 C.F.R. Part 404, Subpart P, Appendix 1. If so, the claimant is disabled, and the claim is granted; otherwise, the Commissioner determines the claimant's residual functional capacity ("RFC") and proceeds to the fourth step.

4. The Commissioner then compares the claimant's RFC with the mental and physical demands of the claimant's past relevant work. If the claimant can perform past relevant work, the claimant is not disabled; otherwise, the Commissioner proceeds to the final step.

5. At the fifth step, the Commissioner determines whether the claimant can

perform any other work that exists in substantial numbers in the national economy in light of the claimant's RFC, age, education, and work experience. If so, the claimant is not disabled, and the claim is denied. If not, the claimant is disabled, and the claim is granted.

*See* 20 C.F.R. § 404.1520(a) and (b) (Step 1); 20 C.F.R. § 404.1520(c) (Step 2); 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526 (Step 3); 20 C.F.R. § 404.1520(e-f) (Step 4); 20 C.F.R. § 404.1520(g) (Step 5).

## II. THE ALJ'S DECISION

Alston applied for benefits on November 10, 2020, claiming she became disabled on May 1, 2020, when she was 48 years old. (R. 18, 30). After her application was denied, Alston requested a hearing before an administrative law judge ("ALJ"). (R. 18). During the June 20, 2023 telephonic hearing, Alston testified she suffers from diabetes, obesity, degenerative joint disease, degenerative disc disease, and peripheral vascular and artery disease; she also noted her fifth right toe had been amputated. (R. 55). Alston further testified her ailments cause pain in her hip, lower back, and lower legs, and prevent her from standing for more than 30 minutes at a time. (R. 55-56). She last worked in 2022—after her alleged disability onset—at a healthcare facility assisting elderly patients, but her impairments and pain limited her work abilities, eventually causing her to quit. (R. 54-56). She quit her prior job as a cashier for the same reason. (R. 57).

Alston testified she experiences extreme functional limitations. She only leaves the house approximately three times a week but never alone because she is

3

unsteady on her feet.  (R. 62).  Alston is unable to walk more than a few hundred feet due to pain and problems with coordination.  (R. 65-66).  She can only lift and carry ten pounds infrequently and cannot retrieve her mail or care for her cat, and she can only cook via microwave.  (R. 57-58, 61-62, 66).  Alston is unable to clean her house, but her daughter comes to visit once a week to bring in the mail, clean the bathroom, change the bedding, and care for the cat.  (R. 57, 60-61).  Alston owns a vehicle and can drive "a little."  (R. 53).  She does not regularly shop for groceries or run errands; when she goes to a store, she must use a cane, lean on the buggy, or use a mobility scooter.  (R. 58, 65).  On the occasions that Alston does run errands, she must sit or lie down afterward.  (R. 59).  She typically spends a large portion of the day siting in a recliner.  (R. 60).

Following the hearing, the ALJ denied Alston's claim.  The ALJ first found that Alston had not engaged in substantial gainful activity since the alleged onset date of May 1, 2020.  (R. 20).  At the second step, the ALJ determined Alston had the severe impairments of obesity, osteoarthritis, degenerative joint disease of the left hip, diabetes, and peripheral vascular and artery disease.  (*Id.*).  Of these impairments, it appears the vascular and artery disease had been the most troubling.  After Alston's right, fifth toe became gangrenous and was amputated in August 2022, she underwent two subsequent surgeries in 2022: (1) a bypass and femoral reconstruction to her right leg; and (2) a femoral artery endarterectomy

and angioplasty to her left leg. (R. 22-23). After summarizing the evidence regarding Alston's other medically determinable impairments, including anxiety and depression, the ALJ concluded they did not rise to the level of severe impairments. (R. 23-25).

At the third step, the ALJ determined Alston's medically determinable impairments did not meet or medically equal the severity of one of the Listings. (R. 25). Before proceeding to the fourth step, the ALJ found Alston's impairments could reasonably be expected to cause some of her alleged symptoms and functional limitations but her statements about the intensity, persistence, and limiting effects of those symptoms were not entirely consistent with the medical evidence and other evidence in the record. (R. 26). The ALJ determined Alston had the RFC for light work, with the following limitations:

> She can stand and walk for no more than four hours in an eight-hour workday. She can occasionally climb ramps or stairs. She can never climb ladders, ropes, or scaffolds. The claimant can occasionally balance, frequently stoop, and occasionally kneel, crouch, or crawl. She can occasionally be exposed to extreme cold [and] extreme heat. She cannot be exposed to excessive vibration. She can never be exposed to workplace hazards such as moving mechanical parts and high, exposed places.

(R. 25).

In reaching this conclusion, the ALJ found the medical records did not support the functional limitations Alston reported. (R. 26). In particular, the ALJ noted the medical records showed Alston did not report such severe limitations to

5

her healthcare providers and, similarly, her prescribed medical treatments did not indicate she was suffering from the extreme limitations to which she testified. (*Id*.). The ALJ also noted evidence which contradicted Alston's reported limitations, including an August 4, 2021 consultative examination. Alston drove herself to the appointment, walked without assistance, and appeared comfortable. (R. 21, 27; *see* R. 438). Similarly, the ALJ accurately recounted Alston's functional reports, in which she stated she could drive and shop in stores. (R. 27; *see* R. 250, 270). The ALJ also observed that the limitations Alston reported were contradicted by her ability to work in 2022, nearly two years after her alleged onset. (R. 27).

Regarding Alston's left hip problems, the record included objective evidence supporting the conclusion she suffered from osteoarthritis and degenerative joint disease. (R. 27). However, imaging showed only mild to moderate changes, and examination records from treating sources and the consultative examiner revealed largely normal findings. (*Id.*). Similarly, to the extent Alston reported difficulties standing or walking, the ALJ found they were contradicted by the normal findings from the consultative examination and treatment records showing she was ambulatory. (*Id*). To the extent Alston testified she need a cane to ambulate, the ALJ found she did not satisfy a documented medical need for a cane. (*Id.*).

Regarding peripheral vascular disease, the ALJ pointed to medical records showing normal peripheral effusion and normal motor strength in her extremities. (R. 27). Regarding diabetes, the ALJ cited the lack of evidence showing Alston had ever been hospitalized for complications arising from uncontrolled blood sugar. (*Id.*). The ALJ concluded these impairments did not cause disabling limitations. Regarding obesity, the ALJ determined it did not—either alone or in combination with her other impairments—significantly limit Alston's abilities.

Next, the ALJ addressed the medical opinions in the record. The disability determination service opined Alston could perform a range of medium work and had non-severe, mental impairments. The ALJ concluded the opinion was mostly persuasive as to Alston's mental status, as it was supported by normal mental status exams and Alston's own reports. (R. 29). However, the ALJ found the opinion that Alston could perform a range of medium work was contradicted by subsequent records showing additional physical limitations. (R. 28). Next, the consultative examiner opined Alston would have limitations: (1) performing work that required her stand for long periods; (2) performing strenuous activities; and (3) stooping, bending, frequently changing from sitting to standing, and/or lifting and carrying more than five pounds. (R. 29). The ALJ concluded the consultative examiner's opinion was unpersuasive because it was contradicted by her own findings, including that Alston could lift and carry more than five pounds and had

normal grip strength and range of motion in her upper extremities. (*Id.*). The ALJ also found the limitations the consultative examiner imposed were not supported by the treatment record, which reflected normal motor findings, and the imaging, which showed mild to moderate degenerative changes. Finally, the ALJ considered the December 2020 opinion of Terry James, M.D., that Alston was "not able to work at this time due to health conditions." The ALJ found this one-sentence statement—jotted on a prescription pad—to be neither valuable nor persuasive, as it went to the ultimate issue reserved for the Commissioner. (R. 29-30; *see* R. 928).

At the fourth step, the ALJ determined Alston could not perform her past relevant work. (R. 30). Proceeding to the final step, the ALJ found Alston was a younger individual on the alleged disability onset date. (*Id.*). She had a limited education, and transferable skills were not an issue because the Medical-Vocational Rules framework supported a finding that Alston was not disabled regardless. (*Id.*). Finally, the ALJ concluded there were a significant number of jobs in the national economy Alston could perform, including marker, companion, and mail clerk. (R. 31). Accordingly, the ALJ reasoned Alston was not disabled. (*Id.*).

The Appeals Council denied review of the ALJ's decision, and that decision became the final decision of the Commissioner. (*Id.* at 1); *see Fry v. Massanari*,

209 F. Supp. 2d 1246, 1251 (N.D. Ala. 2001) (citing *Falge v. Apfel*, 150 F.3d 1320, 1322 (11th Cir. 1998)). Thereafter, Alston filed this action. (Doc. 1).

## III. STANDARD OF REVIEW

A court's role in reviewing claims brought under the Social Security Act is narrow. The review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner and (2) whether the correct legal standards were applied. *See Stone v. Comm'r of Soc. Sec.*, 544 F. App'x 839, 841 (11th Cir. 2013) (citing *Crawford v. Comm'r Of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)). A court defers to the factual findings of the Commissioner, provided those findings are supported by substantial evidence, but closely scrutinizes the legal conclusions. *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). A district court reviews the Commissioner's legal conclusions *de novo*. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). "The [Commissioner's] failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal." *Cornelius v. Sullivan*, 936 F.2d 1143, 1145–46 (11th Cir. 1991).

## IV. DISCUSSION

After the Commissioner appeared and filed an answer, the Clerk of Court entered a briefing order. (Doc. 8). The order required the plaintiff to file a brief

within 30 days. The Commissioner's brief was due 30 days after the plaintiff's brief, with any reply due within another 14 days. The order noted this matter would be under submission once these deadlines expired. Alston did not file the required brief, and, aside from submitting a form consenting to magistrate judge jurisdiction, has not otherwise appeared during the intervening year.

Even where a plaintiff appealing the Commissioner's denial of benefits does not file a brief, courts in this district have reviewed the record to ensure the ALJ applied the proper legal standards and that substantial evidence supported any factual determinations. *Weems v. Astrue*, No. 11-3083-KOB, 2012 WL 2357743, at \*8 (N.D. Ala. June 19, 2012); *Barnard v. Comm'r of Soc. Sec.*, No. 20-0439-JHE, 2021 WL 4392074, at \*3 (N.D. Ala. Sept. 24, 2021). *But see Walton v. Astrue,* No. 408-219, 2010 WL 519811 at \*5 n.3 (S.D. Ga. Feb. 10, 2010) (failure to file a brief constitutes waiver). Accordingly, this court will not dismiss this matter based on Alston's waiver of issues or failure to prosecute.

Alston's failure to file a brief notwithstanding, the complaint includes a section entitled "Statement of Claim," which, while not citing to any legal authority or presenting comprehensive arguments, does offer clues as to her contentions on appeal. The court interprets the Statement of Claim as focusing on Alston's peripheral artery disease in several respects. (Doc. 1 at 2-3). First, Alston contends the ALJ failed to properly assess how peripheral artery disease could

10

have contributed to her complaints of hip, knee, and back pain, particularly in light of the potentially exacerbating effects of her obesity and diabetes. Alston also posits these same impairments could diminish her ability to walk and stand for long periods of time and could explain her need to spend much of her day in a recliner. Finally, Alston submits, without citation, she "has been averaging 20 to 30 days a year either going to doctor's appointments or in recovery from procedures for her condition." (Doc. 1 at 3). Alston speculates many employers would not allow an employee to miss that amount of work. On a related note, Alston alludes to an indication by Dr. Pierce, a cardiovascular surgeon, that "she would have ongoing issues because of the pronounced nature of her condition and she has (since the hearing) had to have her other leg repaired for the same issue." (*Id.*). Alston also expresses her understanding that standing, walking, or sitting may "place her health in jeopardy." (*Id.*).

To the extent Alston contends the ALJ improperly discredited her reported pain, it is true that a claimant may establish disability through testimony of pain or other subjective symptoms. *Brown v. Sullivan*, 921 F.2d 1233, 1236 (11th Cir. 1991). To do so, she must satisfy the three-part "pain standard" by showing evidence of an underlying medical condition and either: (1) objective medical evidence confirming the severity of the alleged pain or other subjective symptoms arising from the condition; or (2) the objectively determined medical condition is

of such a severity that it can reasonably be expected to give rise to the alleged pain or other subjective symptoms. *Id.*; *Whitmore v. Comm'r of Soc. Sec. Admin.*, 855 F. App'x 641, 643 (11th Cir. 2021); *see also* 20 C.F.R. § 404.1529 (containing substantially similar language); SSR 16-3p (same).

An ALJ may discredit a claimant's testimony concerning pain but must clearly articulate explicit and adequate reasons for doing so. *Brown*, 921 F.2d at 1236; *Whitmore*, 855 F. App'x at 643. In evaluating a claimant's testimony regarding the intensity, persistence, and limiting effects of hers pain, an ALJ considers all available evidence. 20 C.F.R. § 404.1529(c); SSR 16-3p; *Hollingsworth v. Comm'r of Soc. Sec. Admin.*, 846 F. App'x 749, 752 (11th Cir. 2021).

Alston testified pain and other symptoms in her back, left hip, legs, and feet forced her to use a cane and prevented her from walking more than a few hundred feet or standing for more than 30 minutes at a time. Alston also testified she rarely drove or ran errands, never left the house alone, and could only perform light household chores. She reported having to sit or lie down after performing even these limited tasks and that she spent large portions of the day in a recliner. The ALJ articulated multiple reasons for discrediting Alston's testimony, including that it was: (1) not supported by her reports to her medical providers; (2) not supported by the medical treatment prescribed; (3) contradicted by the consultative

examiner's observations; (4) contradicted by her self-reported abilities; and (5) contradicted by her ability to work as a caregiver after her alleged onset of disability. Together, these were proper grounds on which to discredit Alston's testimony, and the ALJ's decision is supported by substantial evidence in this regard. *See* 20 C.F.R. § 404.1529(c); SSR 16-3p; *May v. Comm'r of Soc. Sec. Admin.*, 226 F. App'x 955, 958 (11th Cir. 2007) (ALJ properly discredited plaintiff's subjective symptoms testimony where it was not supported by clinical findings and was consistent with objective medical evidence or reported daily activities).

Next, Alston's Statement of Claim challenges the ALJ's failure to consider the amount of time she was unavailable to work when she was attending doctor appointments and recovering from medical procedures. This argument is wholly conclusory and undeveloped. Additionally, the record does not support Alston's naked assertion that doctor appointments and recovery would have caused her to be absent from work, on average, 20-30 days annually. Finally, to the extent Alston contends the ALJ failed to properly consider a statement by Dr. Pierce, the Statement of Claim is fatally vague and conclusory in this regard.

Accordingly, the court's understanding of the issues presented in the Statement of Claim do not entitle Alston to relief. Moreover, the court's review of

the entire record reveals that the Commissioner's decision applied the correct legal standards and was supported by substantial evidence.

## V.     CONCLUSION

For all of the foregoing reasons, the Commissioner's decision will be affirmed.  A separate order will be entered.

**DONE** this 25th day of March, 2026.

_____
STACI  G. CORNELIUS
U.S. MAGISTRATE JUDGE